UNITED STATES DISTRICT COURT
DISTRICT OF CONNECTICUT

```
HANDSOME, INC., et al.,          :
                                 :
        Plaintiffs,              :
                                 :
        v.                       :    CASE NO.  3:11cv1288(RNC)
                                 :
TOWN OF MONROE, et al.,          :
                                 :
        Defendants.              :
```

RULING AND ORDER

The plaintiffs, Handsome, Inc. and its officers, Todd and Mona Cascella, bring this action pursuant to 42 U.S.C. § 1983 against the Town of Monroe, the Monroe Planning and Zoning Commission ("Commission"), Scott Schatzlein, town engineer, Richard Zini, Chairman of the Commission and Karen Martin, a Commission member. The plaintiffs allege that the defendants deprived them of due process, equal protection and their right of access to the courts. Pending before the court are three motions concerning the production of notes taken by an attorney for the defendants during the defendant Commission's May 5, 2011 executive session: (1) the defendants' "motion to quash or modify the subpoena duces tecum of [Attorney] Cara Ann Ceraso" (doc. #57), (2) "nonparty witness's motion to quash subpoena that seeks to produce documents" (doc. #73) and (3) the plaintiffs' "motion to compel disclosure of handwritten notes of non-party deponent [Attorney] Cara Ann Ceraso" (doc. #80).

I.   Background

        This is the latest round in a long-running dispute among the parties over the use of land the plaintiffs own in the defendant town.   In March 2003, the defendant Commission approved the plaintiffs' application for a special exception permit for the construction of an industrial use building at 125 Garder Road in Monroe, Connecticut.   Before the permit was to expire on May 15, 2008, the plaintiffs requested a five-year extension of the permit. In April 2008, the Commission denied the plaintiffs' request.   The plaintiffs appealed the denial to the Superior Court.

        The plaintiffs also had an affordable housing application for a different property on Garder Road pending before the Commission. Public hearings were held in April and May 2008.   In August 2008, the Commission denied the affordable housing application.   (Doc. #115, Ex. A.) The plaintiffs appealed the denial to Superior Court. (Id.)   They also appealed the denial of a related inland wetlands application.   In July 2009, the Commission and the plaintiffs reached a settlement agreement regarding the plaintiffs' appeals as to the affordable housing application and inland wetlands application.  (Id.)

        With regard to the plaintiffs' appeal of the denial of their request for an extension of the permit for 125 Garder Road, in September 2010, the superior court (Owens, J.) sustained the plaintiffs' appeal and held that "the commission has no option but

to approve the plaintiffs' request for an extension." <u>Handsome, Inc. v. Monroe Planning and Zoning Commission</u>, No. CV084025399, 2010 WL 4069761, at *6 (Conn. Super. Ct. Sept. 10, 2010).

Thereafter, on October 1, 2010, plaintiffs' counsel wrote a letter to the Commission "requesting that the Commission issue the five year permit extension pursuant to the Order of the Superior Court . . . . The five year period should begin to run from the date the extended permit is issued.  The Court's order is clear that the extension is granted; therefore, no new conditions should attach." (Doc. #86, Ex. A.)

The Commission did not respond.  On November 2, 2010, plaintiffs' counsel sent another letter, stating that it had been "more than 50 days since the Court's order" and "request[ing] that this matter be placed on the Commission's next agenda for approval of the permit in compliance with the Court's order."  (Doc. #59, Ex. D.)[1]

At the end of April 2011, Monroe's First Selectman Steve Vavrek ("Vavrek"), town engineer Scott Schatzlein ("Schatzlein") and zoning enforcement officer Joseph Chapman ("Chapman") went to 125 Garder Road and spoke to the plaintiff, Todd Cascella ("Cascella").  (Doc. #105, Cascella Aff. ¶7.)  Schatzlein asked Cascella why work was going on at the site when there was a cease and desist order in effect.  Schatzlein also said that he could

---

[1]Sometime after this, new counsel appeared on behalf of the plaintiffs.

require Cascella to post a bond of $100,000.  Cascella protested
that there was no cease and desist order in effect and that the
court had held that the Commission could not attach new conditions
to the permit.

On May 2, 2011, Richard Zini, Chairman of the Commission, sent
an email to First Selectman Vavrek, town engineer Schatzlein, and
zoning enforcement officer Chapman stating that "work continues at
125 Garder Road. . . . This property owner is currently not within
zoning compliance and regulations.  Please have someone stop by and
view the property, take pictures and log the observances."  (Doc.
#59, Ex. A.) He requested that First Selectman Vavrek contact Town
Attorney Jack Fracassini regarding issuing a cease and desist order
to the plaintiffs.  Finally, Zini asked that Cascella be sent a
registered letter to appear at the next Commission meeting. (Doc.
#59, Ex. A.)

The Commission placed the property on the agenda for the May
5, 2011 meeting.  Just before the meeting, the Town retained the
firm of Pullman & Comley, LLC to assist with enforcement matters,
including compliance with the superior court decision as to 125
Garder Road. (Doc. #93-13, McCreery Dep. at 6-7.)  Attorney Edward
McCreery, a litigator, and an associate, Attorney Cara Ann Ceraso,
attended the meeting.  Plaintiff Cascella, accompanied by his
attorney, also attended the meeting.  (Doc. #105, pl's ex. 15,
Cascella Aff. ¶9.)

Before considering the matter of 125 Garder Road in regular session, the Commission moved into executive session. Attorney Ceraso attended the executive session and took handwritten notes. After the Commission emerged from executive session, the Commission voted to grant the extension permit as of March 2008, with the result that the permit extended only through March of 2013.[2] The Commission also required a $100,000 bond and re-imposed various conditions in the original approval, but emphasized each condition and added requirements that road improvement plans, landscaping plans, engineering reports and maps that had not been submitted over the intervening years must now be filed. The Commission further stated that the town engineer would ascertain the amount of any bonding requirement for the road improvements after the plans were submitted. Finally, the Commission stated that if the plaintiffs did not comply with the conditions within thirty days, a cease and desist order would issue. (Doc. #105, Ex. 14 at 2.)

After the May 5, 2011 meeting, multiple legal actions ensued. The plaintiffs: (1) appealed the Commission's decision regarding the permit extension, challenging the imposition of conditions which were not part of the March 2003 special exception permit approval and the March 2013 expiration date for the permit, Handsome, Inc. v. Planning and Zoning Commission of the Town of Monroe, Superior Court of Connecticut, Judicial District of

---

[2]Contrary to statute, no minutes of the executive session were maintained. (Doc. #59, Ex. C.)

Fairfield at Bridgeport, Docket No. CV-11-6019523-S, (2) filed a FOIA complaint regarding the executive session, <u>In the matter of a complaint by Handsome Inc.</u>, FOIC Docket No. 2011-284, and (3) commenced the instant lawsuit.   The defendant's zoning enforcement officer issued a cease and desist order to Handsome instructing it to comply with the conditions of the permit. Thereafter, the Town of Monroe initiated a lawsuit seeking injunctive relief.  <u>See</u> <u>Joseph Chapman, Zoning Enforcement Officer of the Town of Monroe v. Handsome, Inc.</u>, Superior Court of Connecticut, Judicial District of Fairfield at Bridgeport, Docket No. CV-11-6020905-S.   During the course of state litigation, the superior court ruled that the Commission's discussion during its executive session was not subject to the attorney-client privilege. (Doc. #59, Ex. C.)

In June 2013, the plaintiffs issued a subpoena to Attorney Ceraso for notes she took during the May 5, 2011 executive session. (Doc. #73, Ex. A.)  In response, the defendants served a privilege log asserting that the notes are protected work product. (Doc. #58, Ex. A.)  On June 18, 2013, the plaintiffs took Ceraso's deposition. (Doc. #105, Ex. 19.)  She recalled little of what transpired during the executive session and had not reviewed her notes.   The plaintiffs deposed all twelve of the Commission members, some twice, as well as Attorney McCreery and First Selectman Vavrek, regarding the executive session.

These motions followed.  The defendants and nonparty Attorney Ceraso maintain that the plaintiffs' subpoena should be quashed because the notes are work product and the plaintiffs have not demonstrated that they "cannot, without undue hardship, obtain their substantial equivalent by other means" as required by Fed. R. Civ. P. 26(b)(3). (Doc. #86 at 8.)  The plaintiffs contend that the notes are not work product and, even if they are, they have shown substantial need.

II.  Legal Standard

The work product doctrine is codified in Fed. R. Civ. P. 26(b)(3), which provides in relevant part that "[o]rdinarily, a party may not discover documents . . . that are prepared in anticipation of litigation or for trial by or for another party or its representative (including the other party's attorney . . .) . . . ."[3]  A document is prepared in anticipation of litigation if "in light of the nature of the document and the factual situation in the particular case, [it] can fairly be said to have been

---

[3]As discussed infra, there are two types of work product. They are generally referred to as ordinary (or fact) work product and opinion work product.  When deciding whether material is work product, the distinction does not matter.  The distinction becomes important when determining how much protection to give the work product material. Fact work product is discoverable if the party seeking discovery demonstrates "a substantial need for the material and an inability to obtain the substantial equivalent of the information without undue hardship." Rule 26(b)(3)(A)(ii).  "In contrast, opinion work product reveals the 'mental impressions, conclusions, opinions, or legal theories of an attorney or other representative,' and is entitled to greater protection than fact work product." In re Grand Jury Subpoena Dated July 6, 2005, 510 F.3d 180, 183 (2d Cir. 2007).  See Fed. R. Civ. P. 26(b)(3)(B).

prepared or obtained because of the prospect of litigation."
United States v. Adlman, 134 F.3d 1194, 1202 (2d Cir. 1998).
Whether work product protection applies turns on whether the
material "would have been prepared irrespective of the expected
litigation . . . ." Id. at 1204.  Work product protection is not
available for "documents that are prepared in the ordinary course
of business . . . ." Id. at 1202.  The party seeking work product
protection bears the burden of proving that the sought documents
were "prepared in anticipation of litigation or for trial by or for
another party or its representative." QBE Ins. Corp. v. Interstate
Fire & Safety Equip. Co., Inc., No. 3:07cv1883(SRU), 2011 WL
692982, at *2 (D. Conn. Feb. 18, 2011).

III.  Discussion

A.    Are the Notes are Work Product?

The defendants argue that the notes are work product because
they were prepared in anticipation of litigation.  They point to
the October 1, 2010 letter from plaintiffs' counsel to the
Commission, which insisted that the Commission could not impose new
conditions and that the five year period must run from the date the
extended permit issued. (Doc. #86, Ex. A.)  Defendants contend that
"the letter, although not expressly, threatened litigation if the
Commission did not strictly comply."  (Doc. #58 at 6.)  The
defendants also emphasize the parties' history of litigation.  The
plaintiffs previously sued the Commission regarding their

affordable housing permit, wetlands application and request for an
extension of their original permit.  The defendants note that they
retained litigation counsel before the Commission meeting
specifically to assist with the approval process of the permit for
125 Garder Road.  Considering the totality of the circumstances,
defendants maintain, the notes were created because of anticipated
litigation.

The plaintiffs disagree.  They argue that when the Commission
failed to renew the permit following the court's September 2010
order, plaintiffs' counsel merely requested compliance.  According
to the plaintiffs, counsel's October 2010 letter "anticipated no
litigation if the commission complied with Judge Owens' order and
reissued the permit with the same conditions as before." (Doc. #59
at 8.)  Plaintiffs point to the time lag between the letter and the
Commission's hiring of Pullman & Comley, arguing that "the claim
that Attorney McCreery was hired in direct response to the October
1, 2010 letter is not credible." (Doc. #59 at 8.)  They also note
to Attorney Ceraso's deposition testimony that she was unaware of
the October 2010 letter and that she took notes because that is her
custom. (Doc. #115, Ex. 19 at 24, 28.)  The plaintiffs argue that
"[g]iven the innocuous nature of both [plaintiffs' counsels']
letters to the commission" and "the fact that no litigation . . .
followed until after the commission renewed the permit with onerous
new conditions attached, the claim that Attorney Ceraso made her

notes in anticipation of litigation is disingenuous at best."
(Doc. #59 at 8.)

On the record before the court, the court finds that the notes
were prepared in anticipation of litigation.  The parties had a
history of litigation.  See Brown v. Unified School Dist. No. 501,
No. 10-1096-JTM, 2011 WL 111693, at *3 (D. Kan. Jan. 13, 2011)
(where plaintiff had sued school district twice before and brought
an attorney with him to the meeting, "under the circumstances,
litigation was reasonably anticipated when [the attorney for the
defendant school district] prepared her notes.")  Prior to the
Commission meeting, the defendants visited the plaintiff, stated
that the site should not be operational and declared that the Town
could impose a $100,000 bond.  As evidenced by plaintiffs'
counsel's October 2010 letter and the defendants' proposed cease
and desist order, the parties remained in dispute over the
effective date of the permit extension and whether the defendants
could add new conditions to the permit.  (Doc. #59, Ex. A, doc.
#86, Ex. A.)  Finally, just before the Commission meeting where the
Garder Road project was to be discussed, the defendants hired
litigation counsel.  The plaintiffs' argument that Ceraso was
unaware of the October 2010 letter and that she took notes as a
matter of custom is unavailing.  "[W]e must judge a tree by its
fruit."  Hanson v. U.S. Agency for Intern. Development, 372 F.3d
286, 294 (4th Cir. 2004) (notwithstanding attorney's "disclaimer

that he was not acting in a legal capacity and his subsequent affidavit to that effect," court determined that the document was attorney-work product prepared in anticipation of litigation). The Commission engaged litigation counsel from Pullman & Comley for the May 5, 2011 meeting. Attorney Ceraso created these notes during the adjudication of the plaintiffs' permit extension, pursuant to a remand order from the plaintiffs' prior zoning appeal. In light of this factual situation, the notes "can fairly be said to have been prepared or obtained because of the prospect of litigation." Adlman, 134 F.3d at 1202. See Equal Rights Center v. Post Properties, Inc., 247 F.R.D. 208, 211 (D.D.C. 2008)("while [defendant] could not have been certain that [plaintiff] would file suit against it, the fact that [plaintiff] had filed suit against four other housing developers and sought media attention for this 'series' of lawsuits supports a finding that [defendant] had a subjective and objectively reasonable belief that litigation was a real possibility.")

B.  Have Plaintiffs Shown Substantial Need?

     "Once a party establishes that its document is protected by the work-product privilege, the burden shifts to the party seeking discovery to prove that discovery is warranted." In re Petition of MDM Marina Corp., No. 13cv597 (ENV)(VMS), 2013 WL 6711584, at *3 (E.D.N.Y. Dec. 18, 2013). "The degree of protection afforded under the work product doctrine is dependent upon whether the work

product is ordinary or opinion work product." Loftis v. Amica Mut. Ins. Co., 175 F.R.D. 5, 11 (D. Conn. 1997).  If a document is ordinary work product, the requesting party (here, the plaintiffs) must demonstrate "substantial need of the materials in the preparation of the party's case and that the party is unable without undue hardship to obtain the substantial equivalent of the materials by other means." Fed. R. Civ. P. 26(b)(3).  Opinion work product is entitled to greater protection, and, in order to obtain such material, the party seeking disclosure must make a "far stronger showing of necessity and unavailability by other means." Upjohn Co. v. United States, 449 U.S. 383, 401 (1981).

The defendants argue that the plaintiffs cannot satisfy the "substantial need" standard for ordinary work product.  They contend that the plaintiffs have had ample opportunity to determine what occurred during the executive session.  Defendants point out that the plaintiffs deposed all the Commission members, some twice, as well as Attorney McCreery and First Selectman Vavrek, and cite authority that substantial need does not exist where the information sought can be obtained through depositions.[6]  See, e.g., 8 Wright, Miller & Marcus, Federal Practice & Procedure § 2025 at 538 (3rd ed. 2010) ("[D]iscovery of work product material will be denied if the party seeking discovery can obtain the

---

[6]The defendants point especially to the detailed testimony of McCreery and Schatzlein about discussions during the executive session.  (Doc. #74, Ex. 1, 2.)

desired information by taking the depositions of witnesses.")

The plaintiffs maintain that they have made a sufficient showing of substantial need and unavailability.  They argue that they have overcome the qualified protection for ordinary work product because no official minutes were kept and Ceraso's notes are the "only contemporaneous account of what really happened in the executive session." (Doc. #59 at 4.)  Citing Coogan v. Cornet Transp. Co., 199 F.R.D. 166, 167 (D. Md. 2001), they argue that there is a "special value" to a contemporaneous statement.  Because of the defendants' legal challenges to the superior court's ruling that the attorney client privilege had been waived, plaintiffs say they were unable to depose Commission members until a year after the executive session.  According to the plaintiffs, "nearly all the commission members who attended the May 5, 2011 [executive session] asserted in their depositions that [they] had little or no recollection at all as to what occurred at the executive session." (Doc. #59 at 5.)  They also contend that witnesses could not agree as to whether First Selectman Vavrek attended the meeting, citing conflicting deposition testimony from Chairman Zini, Jane Flader, Patrick O'Hara, McCreery, and Ceraso.[7]  (Doc. #59 at 5, doc. #81.)

The plaintiffs' reliance on Coogan, which involved a motor vehicle accident, and similar cases involving contemporaneous

---

[7]First Selectman Vavrek testified that he did not attend the meeting.  Doc. #81, Ex. 8.

statements after an accident, is misplaced.   The defendant in
Coogan, a driver of one of two vehicles involved in an accident,
wrote an account of the incident.   The district court for the
District of Maryland held that "[a]ssuming (without deciding) that
[defendant's] statement was prepared in anticipation of litigation
. . . Plaintiffs are entitled to the statement because they have a
'substantial need' for it and cannot obtain its 'substantial
equivalent.'" 199 F.R.D. at 167.   In so concluding, the court held
that "[s]tatements of either the parties or witnesses taken
immediately after the accident and involving a material issue in an
action arising out of that accident, constitute 'unique catalysts
in the search for truth' in the judicial process.'" Id.   The court
found that the plaintiffs had "substantial need" for the statement
"as evidence of what occurred and possibly for impeachment
purposes" and that plaintiffs "could not have obtained the
substantial equivalent of this contemporaneous statement, i.e.,
another contemporaneous statement, without undue hardship." Id. at
168.

    In this case, however, the plaintiffs had access to the
recollections of all the attendees of the executive session.
"Courts in this Circuit have found that 'substantial need' and
'undue hardship' do not exist where the information sought can be
obtained through depositions or other discovery methods."
Government Employees Ins. Co. v. Saco, Mo. CV 2012-5633(NGG)(MDG),

2013 WL 5502871, at *2 (E.D.N.Y. Oct. 2, 2013).

> A witness's availability for a deposition defeats a claim of substantial need for work product material because the party seeking discovery can ask the witness himself about the events in issue, and, if the witness recalls the events in issue, the need for notes or other materials prepared by opposing counsel is, thereby, eliminated. It is always the case that a witness may lie at a deposition or may not have an accurate recollection. However, if those facts, without more, were sufficient to pierce a claim of work product, work-product protection, at least with respect to witness statements, would quickly become meaningless.

A.I.A. Holdings, S.A. v. Lehman Bros., Inc., No. 97 Civ. 4978(LMM), 2002 WL 31385824, at *8 (S.D.N.Y. Oct. 21, 2002). See Tribune Co. v. York Holdings, Inc., 93 Civ. 7222(LAP), 1998 WL 175933 at *4 (S.D.N.Y. Apr. 14, 1998) ("'Substantial need' cannot be shown where persons with equivalent information are available for deposition.").

"No one doubts that production should be ordered if the witness has a faulty memory and no longer remembers details of the event." 8 Wright, Miller & Marcus, Federal Practice & Procedure § 2025 at 546 (3rd ed. 2010). However, the plaintiffs' allegation that "nearly all the commission members who attended the May 5, 2011" had "little or no recollection at all as to what occurred" is conclusory and unsubstantiated. The only evidence the plaintiffs submitted in support of their assertion was deposition excerpts from two attendees, Ceraso and Jane Flader, who were unable to

recall details.[8]  The record before the court does not lead to a conclusion that the other attendees also were unable to remember and provide testimony.   To the contrary, the depositions of McCreery and Schatzlein offered by the defendants are very detailed; they testified as to discussions regarding, inter alia, the impact of the superior court decision, the setting of the bond, the status of the property, and the date that should be set for the renewal of the permit.  (Doc. #86, Ex C, D.)

     The plaintiffs have not met the burden necessary to overcome ordinary work product protection.   They have not demonstrated an inability to obtain a substantial equivalent for Attorney Ceraso's notes.   See Feacher v. Intercontinental Hotels Group, No. 3:06-CV-0877 (TJM/DEP), 2007 WL 3104329, at *4 (N.D.N.Y. Oct. 22, 2007)("A trial court has wide discretion in determining the existence of substantial need and undue hardship.")  Because the plaintiffs have not met the lesser burden associated with ordinary work product, "it is unnecessary to consider whether and to what extent any of this material constitutes opinion work product that is discoverable, if at all, only on a more demanding standard . . . ." Chevron Corp. v. Donziger, No. 11 Civ. 0691(LAK), 2013 WL 3294820, at *2 n.12 (S.D.N.Y. June 28, 2013).  The defendants' "motion to quash or modify the subpoena duces tecum of Cara Ann

---

[8]Plaintiffs submitted deposition excerpts of a few other attendees but those excerpts only concerned whether First Selectmen Vavrek attended the executive session.

Ceraso" (doc. #57) and "nonparty witness's motion to quash subpoena that seeks to produce documents" (doc. #73) are granted.  The plaintiffs' "motion to compel disclosure of handwritten notes of non-party deponent Cara Ann Ceraso" (doc. #80) is denied.

SO ORDERED at Hartford, Connecticut this 31st day of January, 2014.

```
_____/s/_____
Donna F. Martinez
United States Magistrate Judge
```